## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAURETA GJONI, LUCELAINES CALDERON, YONEIBY LORENZO, ELBA MIRABAL, AUGUSTIN TUQI, TON TUQI, MERITA GASHI, MARIA GOMEZ, MAGBULE DEMO, SADETE BANA, and JUDYANN WILLIAMS,<br><br>*Plaintiffs*,<br><br>v.<br><br>TWITTER, INC., X CORP., and NEXGEN FACILITIES GROUP, LLC,<br><br>*Defendants*. | **COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Civ. Action No.: 23-cv-4465 |

Plaintiffs Laureta Gjoni, Lucelaines Calderon, Yoneiby Lorenzo, Elba Mirabal, Augustin Tuqi, Ton Tuqi, Merita Gashi, Maria Gomez, Magbule Demo, Sadete Bana, and Judyann Williams, by their undersigned attorneys Kakalec Law PLLC, for their Complaint, allege as follows:

**Preliminary Statement**

1. New York City has codified a strong set of protections for building service workers when the contracts they work under are terminated, the Displaced Building Service Workers Protection Act ("DBSWPA"), N.Y.C. Admin Code § 22-505. These protections are designed to ensure stable employment and income for the people who clean and take care of New York City's large office and commercial buildings.

2. But on December 19, 2022, Twitter, Inc. ("Twitter") abruptly terminated its contract for cleaning services with its cleaning contractor, and left Plaintiffs, who were working under that contract, without any employment on the eve of the Christmas holidays.

3. Twitter subsequently failed to comply with the DBSWPA's requirements that it retain the employees covered under that contract, either directly or through a successor building service contractor.

4. In the months since, Twitter has failed to rectify the situation, even as it has hired a new cleaning contractor, Defendant Nexgen Facilities Group, LLC ("Nexgen"). And Nexgen has also failed to comply with its obligations under the DBSWPA as a successor building service contractor.

5. As a result of Twitter and Nexgen's actions, Plaintiffs have gone months without work, and are now owed hundreds of thousands of dollars in back wages. These damages continue to accrue every day that Plaintiffs are not reinstated to their positions.

6. Plaintiffs bring this action seeking to enforce their rights under the DBSWPA. Plaintiffs seek, *inter alia*, an immediate injunction ordering their reinstatement to employment and retention for at least ninety days, as well as their back wages and liquidated damages.

## Jurisdiction and Venue

7. The Court has jurisdiction over Plaintiffs' New York City law claims under 28 U.S.C. § 1332 (diversity jurisdiction).

8. The amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.

9. There is no common state citizenship between Plaintiffs and Defendants.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the acts, events, and omissions giving rise to Plaintiffs' claims occurred in this district.

## Parties

11. Plaintiff Laureta Gjoni is an individual who is domiciled in New York, and is thus a citizen of New York.

12. Plaintiff Lucelaines Calderon is an individual who is domiciled in New York, and is thus a citizen of New York.

13. Plaintiff Yoneiby Lorenzo is an individual who is domiciled in New York, and is thus a citizen of New York.

14. Plaintiff Elba Mirabal is an individual who is domiciled in New York, and is thus a citizen of New York.

15. Plaintiff Augustin Tuqi is an individual who is domiciled in New York, and is thus a citizen of New York.

16. Plaintiff Ton Tuqi is an individual who is domiciled in New York, and is thus a citizen of New York.

17. Plaintiff Merita Gashi is an individual who is domiciled in New York, and is thus a citizen of New York.

18. Plaintiff Maria Gomez is an individual who is domiciled in New York, and is thus a citizen of New York.

19. Plaintiff Magbule Demo is an individual who is domiciled in New Jersey, and is thus a citizen of New Jersey.

20. Plaintiff Sadete Bana is an individual who is domiciled in New York, and is thus a citizen of New York.

21. Plaintiff Judyann Williams is an individual who is domiciled in New York, and is thus a citizen of New York.

22. Defendant Twitter, Inc. is or was a corporation that was incorporated in Delaware with its principal place of business in California, and is or was therefore a citizen of Delaware and California under 28 U.S.C. § 1332(c)(1).

23. Twitter, Inc.'s registration with New York State as a foreign business corporation is listed as inactive effective May 2, 2023.

24. Defendant X Corp. is a corporation incorporated in Nevada with its principal place of business in California, and is therefore a citizen of Nevada and California under 28 U.S.C. § 1332(c)(1).

25. X Corp. is registered with New York State as a foreign business corporation.

26. On information and belief, Twitter, Inc. has been merged into X Corp. or reconstituted, at least in part, as X Corp.

27. On information and belief, X Corp. is the successor-in-interest to Twitter, Inc.

28. Defendant NeXgen Facilities Group, LLC ("Nexgen") is a limited liability company.

29. Nexgen's members are James Tabios and Brandon Fitzpatrick, who are individuals domiciled in California and are thus citizens of California.

30. Nexgen is therefore a citizen of California under 28 U.S.C. § 1332.

31. At all times relevant to this action, Twitter has been leasing commercial office space located at 245-249 West 17th Street, New York, NY 10011, which it has been using as Twitter's New York City office (hereafter, the "Twitter NYC Office").

32. The Twitter NYC Office is located in buildings of greater than 100,000 square feet.

33. At all times relevant to this action, Twitter's leasehold has been greater than 35,000 square feet.

34. At all times relevant to this action, Twitter, Inc. has been a "covered employer" under the DBSWPA, N.Y.C. Admin Code § 22-505(a).

35. Beginning on or around February 2023, Nexgen was a "successor building service contractor" and a "covered employer" under the DBSWPA, N.Y.C. Admin Code § 22-505(a).

36. Beginning on or around April 2023, X Corp. was, as the successor-in-interest to Twitter, Inc., a "covered employer" under the DBSWPA, N.Y.C. Admin Code § 22-505(a).

37. At all times relevant to this action, Plaintiffs were "building service employees" protected by the DBSWPA, N.Y.C. Admin Code § 22-505(a).

## Factual Allegations

*Plaintiffs' Employment Under the Previous Building Service Contracts*

38. Ms. Gjoni, Ms. Mirabal, Ms. Gashi, Mr. Lorenzo, Ms. Tuqi, Mr. Tuqi, Ms. Demo, and Ms. Bana began working as cleaners at the Twitter NYC Office in 2015.

39. Ms. Calderon and Ms. Williams began working as cleaners at the Twitter NYC Office in 2018.

40. Ms. Gomez began working as a cleaner at the Twitter NYC Office in 2019.

41. Plaintiffs were union members represented by Local 32BJ of the Service Employees International Union ("SEIU 32BJ").

42. Plaintiffs all worked full-time schedules, for forty hours per week, cleaning the Twitter NYC Office.

43. Plaintiffs' job duties included sweeping and mopping floors, cleaning and sanitizing kitchens and common spaces, emptying and removing trash and recycling, and various other cleaning-related tasks.

44. Beginning on approximately November 7, 2020, Twitter used the building services contractor Flagship Facility Services, Inc. ("Flagship") as its contractor to clean the Twitter NYC Office.

45. From approximately November 7, 2020 through December 19, 2022, Plaintiffs were employed by Flagship.

46. On December 19, 2022, without any warning to Plaintiffs, Twitter terminated its contract with Flagship, under which contract Flagship provided cleaning services to Twitter. Immediately following Twitter's termination of that contract, Flagship terminated Plaintiffs' employment.

47. On information and belief, Twitter did not request a "full and accurate list containing the name, address, date of hire and employment classification of each building service employee employed" from Flagship fifteen days before terminating its contract, as required under the DBSWPA, N.Y.C. Admin Code § 22-505(b)(1).

48. At the time Flagship's contract was terminated, Ms. Gjoni, Ms. Gashi, Ms. Bana, Ms. Demo, Ms. Tuqi, Mr. Tuqi, Ms. Mirabal, and Mr. Lorenzo were each earning approximately $28.65 per hour.

49. At the time Flagship's contract was terminated, Ms. Gomez was earning approximately $24.66 per hour.

50. At the time Flagship's contract was terminated, Ms. Williams was earning approximately $31.16 per hour.

51. At the time Flagship's contract was terminated, Ms. Calderon was earning approximately $31.01 per hour.

52. At all times relevant to this action, no Plaintiff earned an hourly rate of pay in excess of the statutory threshold for protection under the DBSWPA, set forth in N.Y.C. Admin Code § 22-505(b)(1) and adjusted annually by the Mayor's Office of Labor Standards as prescribed in the statute.

53. On December 21, 2022, Plaintiffs' union, SEIU 32BJ, sent an email to Twitter advising Twitter of its obligation to retain Plaintiffs under the DBSWPA, transmitting an unconditional application for employment on behalf of Plaintiffs, and requesting that Twitter retain Plaintiffs for a minimum of 90 days, pursuant to the Act.

54. Twitter did not respond to SEIU 32BJ's email. Twitter did not thereafter offer Plaintiffs employment, either directly or through a subsequent building service contractor, in the months that followed.

55. As a result of Twitter's actions, Plaintiffs were left jobless on Christmas Eve, forcing several of them to cancel or severely curtail their holiday celebrations.

*Twitter's Failure to Come into Compliance*

56. In the months that followed, Twitter continued to ignore Plaintiffs' and their union's request to be retained as cleaners for the Twitter NYC Office, and their protests seeking action from the company.

57. Beginning in approximately February 2023, Twitter enlisted a new contractor, Defendant Nexgen, to clean the Twitter NYC Office.

58. On February 14, 2023, SEIU 32BJ sent Nexgen's President Jim Tabios an email advising Nexgen of its obligation to retain Plaintiffs under the DBSWPA, transmitting an unconditional application for employment on behalf of Plaintiffs, and requesting that Nexgen retain Plaintiffs for a minimum of 90 days, pursuant to the Act.

59. Nexgen did not respond SEIU 32BJ's request.

60. Nexgen did not thereafter offer Plaintiffs employment.

## First Cause of Action
### New York City Displaced Building Service Workers Protection Act
### NYC Admin Code § 22-505

61. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

62. Defendants failed to comply with their obligations under the DBSWPA.

63. Defendants failed to retain Plaintiffs in violation of the DBSWPA, and have failed to subsequently instate/reinstate them to employment.

64. Plaintiffs are therefore entitled to their back wages from the time of their termination through the present, which are continuing to accrue, plus an additional equal amount in liquidated damages, as a consequence of Defendants' failure to comply with the DBSWPA, under N.Y.C. Admin Code. § 22-505(e)(3)(a).

65. Plaintiffs further seek, and are entitled to, an injunction ordering their immediate instatement/reinstatement to employment by Defendants, and ordering that Plaintiffs be retained for a 90-day transition period, as required under the DBSWPA.

66. Plaintiffs also seek, and are entitled to, the cost of the benefits that the successor building service contractor would have incurred for them under Plaintiffs' benefit plan, under N.Y.C. Admin Code § 22-505(e)(3)(b).

67. Plaintiffs also seek, and are entitled to, attorneys' fees and costs under N.Y.C. Admin Code § 22-505(e)(3)(c), and interest.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable.

**WHEREFORE**, Plaintiffs request that this Court enter an Order:

    a. assuming jurisdiction over this action;

b. declaring Defendants violated the DBSWPA;

c. granting Plaintiffs preliminary and permanent injunctive relief by ordering Defendants to instate/reinstate Plaintiffs, retain them for a 90 day transition period, conduct a written performance evaluation at the end of the 90-day transition period and, if their performance is satisfactory, offer them continued employment, as required by the DBSWPA;

d. permanently enjoining Defendants from further violations of the DBSWPA;

e. granting judgment to Plaintiffs on their DBSWPA claims and awarding Plaintiffs their unpaid back wages for the period from the date of Plaintiffs' discharge through the effective date of any offer of instatement/reinstatement, plus an equal amount in liquidated damages, plus the costs of benefits that would have been incurred for the Plaintiffs under Plaintiffs' benefit plans. ;

f. awarding Plaintiffs prejudgment and postjudgment interest as allowed by law;

g. awarding Plaintiffs their costs and reasonable attorneys' fees; and

h. granting such further relief as the Court deems just and proper.

DATED:   Brooklyn, NY
May 30, 2023

Hugh Baran (he/him)
Patricia Kakalec (she/her)
**KAKALEC LAW PLLC**
195 Montague Street, 14th Floor
Brooklyn, NY 11201
(212) 705-8730
Hugh@KakalecLaw.com
Patricia@KakalecLaw.com

*Attorneys for Plaintiffs*