**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAURETA GJONI, LUCELAINES CALDERON, YONEIBY LORENZO, ELBA MIRABAL, AUGUSTIN TUQI, TON TUQI, MERITA GASHI, MARIA GOMEZ, MAGBULE DEMO, SADETE BANA, and JUDYANN WILLIAMS,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., X CORP., and NEXGEN FACILITIES GROUP, LLC,<br><br>Defendants. | Case No. 1:23-cv-04465<br><br>**DEFENDANTS X CORP. AND TWITTER, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT** |

**X CORP. AND TWITTER, INC.'S**
**ANSWER TO PLAINTIFFS' COMPLAINT**

Defendant X Corp., on its own behalf and as successor in interest to Defendant Twitter, Inc. (collectively "X Corp."), by and through its attorneys, Morgan, Lewis & Bockius LLP, hereby answers the Complaint of Plaintiffs Laureta Gjoni, Lucelaines Calderon, Yoneiby Lorenzo, Elba Mirabal, Augustin Tuqi, Ton Tuqi, Merita Gashi, Maria Gomez, Magbule Demo, Sadete Bana, and Judyann Williams (together, "Plaintiffs"), in accordance with the numbered paragraphs thereof as follows:

**1.     New York City has codified a strong set of protections for building service workers when the contracts they work under are terminated, the Displaced Building Service Workers Protection Act ("DBSWPA"), N.Y.C. Admin Code § 22-505. These protections are designed to ensure stable employment and income for the people who clean and take care of New York City's large office and commercial buildings.**

**ANSWER:**     X Corp. avers that the statute referenced in Paragraph 1 of the Complaint is a document that speaks for itself.  To the extent that the allegations of Paragraph 1 misconstrue, mischaracterize, or misstate the content of such document or otherwise take statements out of

context, they are denied.  X Corp. denies the remaining allegations in Paragraph 1 of the Complaint.

**2.      But on December 19, 2022, Twitter, Inc. ("Twitter") abruptly terminated its contract for cleaning services with its cleaning contractor, and left Plaintiffs, who were working under that contract, without any employment on the eve of the Christmas holidays.**

**ANSWER:**   X Corp. admits that Twitter, Inc.'s contract with Flagship was terminated in or around December 2022.  X Corp. lacks knowledge or information sufficient to form a belief as to whether Plaintiffs were without any employment on the eve of the Christmas holidays and therefore denies the allegation.  X Corp. denies any remaining allegations in Paragraph 2 of the Complaint.

**3.      Twitter subsequently failed to comply with the DBSWPA's requirements that it retain the employees covered under that contract, either directly or through a successor building service contractor.**

**ANSWER:**   The allegations in Paragraph 3 of the Complaint contain legal conclusions to which no response is required. To the extent that a response is required, X Corp. denies the allegations.  X Corp. denies any remaining allegations in Paragraph 3 of the Complaint.

**4.      In the months since, Twitter has failed to rectify the situation, even as it has hired a new cleaning contractor, Defendant Nexgen Facilities Group, LLC ("Nexgen"). And Nexgen has also failed to comply with its obligations under the DBSWPA as a successor building service contractor.**

**ANSWER:**   The allegations in Paragraph 4 of the Complaint contain legal conclusions to which no response is required. To the extent that a response is required, X Corp. denies the allegations.  X Corp. lacks knowledge or information sufficient to form a belief as to whether Nexgen complied with any obligations under the DBSWPA. X Corp. denies any remaining allegations in Paragraph 4 of the Complaint.

**5.      As a result of Twitter and Nexgen's actions, Plaintiffs have gone months without work, and are now owed hundreds of thousands of dollars in back wages. These damages continue to accrue every day that Plaintiffs are not reinstated to their positions.**

**ANSWER:**    The allegations in Paragraph 5 of the Complaint contain legal conclusions to which no response is required. To the extent that a response is required, X Corp. denies the allegations.  In addition, X Corp. lacks knowledge or information sufficient to form a belief as to whether Plaintiffs have gone months without work and therefore denies those allegations.  X Corp. denies that Plaintiffs have stated a cognizable legal claim for any cause of action that would entitle them to any compensation, damages, or relief whatsoever.   X Corp. denies any remaining allegations in Paragraph 5 of the Complaint.

**6.      Plaintiffs bring this action seeking to enforce their rights under the DBSWPA. Plaintiffs seek,** *inter alia***, an immediate injunction ordering their reinstatement to employment and retention for at least ninety days, as well as their back wages and liquidated damages.**

**ANSWER:**    The allegations in Paragraph 6 of the Complaint contain legal conclusions to which no response is required. To the extent that a response is required, X Corp. denies the allegations. The X Corp. denies that Plaintiffs have stated a cognizable legal claim under the New York City Displaced Building Service Workers Protection Act, NYC Admin Code § 22-505 or any cause of action that would entitle them to any compensation, damages, or relief whatsoever. X Corp. denies any remaining allegations in Paragraph 6 of the Complaint.

### Jurisdiction and Venue

**7.      The Court has jurisdiction over Plaintiffs' New York City law claims under 28 U.S.C. § 1332 (diversity jurisdiction).**

**ANSWER:**    The allegations in Paragraph 7 of the Complaint are legal conclusions to which no response is required. To the extent that a response is required, X Corp. admits that Plaintiffs purport to invoke the Court's jurisdiction pursuant to 28 U.S.C. § 1332.  X Corp. denies any remaining allegations in Paragraph 7 of the Complaint.

**8.      The amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.**

**ANSWER:**   X Corp. admits that Plaintiffs purport to seek an amount in excess of $75,000 in their Complaint.  X Corp. denies that Plaintiffs have stated a cognizable legal claim for any cause of action that would entitle them to any compensation, damages, or relief whatsoever. X Corp. denies any remaining allegations in Paragraph 8 of the Complaint.

**9.**      **There is no common state citizenship between Plaintiffs and Defendants.**

**ANSWER:**   X Corp lacks knowledge or information sufficient to form a belief as to where each of the named Plaintiffs is currently residing and, therefore, denies the allegations in Paragraph 9 of the Complaint.

**10.**      **Venue is proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the acts, events, and omissions giving rise to Plaintiffs' claims occurred in this district.**

**ANSWER:**   The allegations in Paragraph 10 of the Complaint contain legal conclusions to which no response is required. To the extent that a response is required, X Corp. denies the allegations.  X Corp. denies any remaining allegations in Paragraph 10 of the Complaint.

**Parties**

**11.      Plaintiff Laureta Gjoni is an individual who is domiciled in New York, and is thus a citizen of New York.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to the citizenship of and where Plaintiff Laureta Gjoni is currently residing and, therefore, denies the allegations in Paragraph 11 of the Complaint.

**12.      Plaintiff Lucelaines Calderon is an individual who is domiciled in New York, and is thus a citizen of New York.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to the citizenship of and where Plaintiff Lucelaines Calderon is currently residing and, therefore, denies the allegations in Paragraph 12 of the Complaint.

**13.      Plaintiff Yoneiby Lorenzo is an individual who is domiciled in New York, and is thus a citizen of New York.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to the citizenship of and where Plaintiff Yoneiby Lorenzo is currently residing and, therefore, denies the allegations in Paragraph 13 of the Complaint.

**14.    Plaintiff Elba Mirabal is an individual who is domiciled in New York, and is thus a citizen of New York.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to the citizenship of and where Plaintiff Elba Mirabal is currently residing and, therefore, denies the allegations in Paragraph 14 of the Complaint.

**15.    Plaintiff Augustin Tuqi is an individual who is domiciled in New York, and is thus a citizen of New York.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to the citizenship of and where Plaintiff Augustin Tuqi is currently residing and, therefore, denies the allegations in Paragraph 15 of the Complaint.

**16.    Plaintiff Ton Tuqi is an individual who is domiciled in New York, and is thus a citizen of New York.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to the citizenship of and where Plaintiff Ton Tuqi is currently residing and, therefore, denies the allegations in Paragraph 16 of the Complaint.

**17.    Plaintiff Merita Gashi is an individual who is domiciled in New York, and is thus a citizen of New York.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to the citizenship of and where Plaintiff Merita Gashi is currently residing and, therefore, denies the allegations in Paragraph 17 of the Complaint.

**18.    Plaintiff Maria Gomez is an individual who is domiciled in New York, and is thus a citizen of New York.**

**ANSWER:**    X Corp. lacks knowledge of information sufficient to form a belief as to the citizenship of and where Plaintiff Maria Gomez is currently residing and, therefore, denies the allegations in Paragraph 18 of the Complaint.

**19.    Plaintiff Magbule Demo is an individual who is domiciled in New Jersey, and is thus a citizen of New Jersey.**

**ANSWER:**    X Corp. lacks knowledge of information sufficient to form a belief as to the citizenship of and where Plaintiff Magbule Demo is currently residing and, therefore, denies the allegations in Paragraph 19 of the Complaint.

**20.    Plaintiff Sadete Bana is an individual who is domiciled in New York, and is thus a citizen of New York.**

**ANSWER:**    X Corp. lacks knowledge of information sufficient to form a belief as to the citizenship of and where Plaintiff Sadete Bana is currently residing and, therefore, denies the allegations in Paragraph 20 of the Complaint.

**21.    Plaintiff Judyann Williams is an individual who is domiciled in New York, and is thus a citizen of New York.**

**ANSWER:**    X Corp. lacks knowledge of information sufficient to form a belief as to the citizenship of and where Plaintiff Judyann Williams is currently residing and, therefore, denies the allegations in Paragraph 21 of the Complaint.

**22.    Defendant Twitter, Inc. is or was a corporation that was incorporated in Delaware with its principal place of business in California, and is or was therefore a citizen of Delaware and California under 28 U.S.C. § 1332(c)(1).**

**ANSWER:**    X Corp. admits that, prior to merging into X Corp. and ceasing to exist, Twitter, Inc. was incorporated under the laws of the State of Delaware and had its corporate headquarters located in the State of California.  The allegations in Paragraph 22 contain legal conclusions to which no response is required. To the extent that a response is required, X Corp. denies the allegations.  X Corp. denies any remaining allegations in Paragraph 22 of the Complaint.

23.     **Twitter, Inc.'s registration with New York State as a foreign business corporation is listed as inactive effective May 2, 2023.**

**ANSWER:**   X Corp. avers that the registration referenced in Paragraph 23 of the Complaint is a document that speaks for itself.  To the extent that the allegations of Paragraph 23 misconstrue, mischaracterize, or misstate the content of such document or otherwise take statements out of context, they are denied.  X Corp. denies any remaining allegations in Paragraph 23 of the Complaint.

24.     **Defendant X Corp. is a corporation incorporated in Nevada with its principal place of business in California, and is therefore a citizen of Nevada and California under 28 U.S.C. § 1332(c)(1).**

**ANSWER:**   X Corp. admits that Defendant X Corp. is incorporated under the laws of the State of Nevada and has its corporate headquarters located in the State of California.  The allegations in Paragraph 24 contain legal conclusions to which no response is required. To the extent that a response is required, X Corp. denies the allegations.  X Corp. denies any remaining allegations in Paragraph 24 of the Complaint.

25.     **X Corp. is registered with New York State as a foreign business corporation.**

**ANSWER:**   X Corp. avers that the registration referenced in Paragraph 25 of the Complaint is a document that speaks for itself.  To the extent that the allegations of Paragraph 25 misconstrue, mischaracterize, or misstate the content of such document or otherwise take statements out of context, they are denied.  X Corp. denies any remaining allegations in Paragraph 25 of the Complaint.

26.     **On information and belief, Twitter, Inc. has been merged into X Corp. or reconstituted, at least in part, as X Corp.**

**ANSWER:**   X Corp. admits that Twitter, Inc. merged into X Corp.  X Corp. denies any remaining allegations in Paragraph 26 of the Complaint.

27.     **On information and belief, X Corp. is the successor-in-interest to Twitter, Inc.**

**ANSWER:**   X Corp. admits that it is the successor-in-interest to Twitter, Inc.

**28.    Defendant NeXgen Facilities Group, LLC ("Nexgen") is a limited liability company.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to whether NeXgen Facilities Group is a limited liability company and, therefore, denies the allegations in Paragraph 28 of the Complaint.

**29.    Nexgen's members are James Tabios and Brandon Fitzpatrick, who are individuals domiciled in California and are thus citizens of California.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to where NeXgen Facilities Group has members or where any such purported members are domiciled and, therefore, denies the allegations in Paragraph 29 of the Complaint.

**30.    Nexgen is therefore a citizen of California under 28 U.S.C. § 1332.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to the citizenship of NeXgen Facilities Group and, therefore, denies the allegations in Paragraph 30 of the Complaint.

**31.    At all times relevant to this action, Twitter has been leasing commercial office space located at 245-249 West 17th Street, New York, NY 10011, which it has been using as Twitter's New York City office (hereafter, the "Twitter NYC Office").**

**ANSWER:**   X Corp. admits that Twitter, Inc. leased an office space at 245-249 West 17th Street, New York, NY 10011.  X Corp. denies any remaining allegations in Paragraph 31 of the Complaint.

**32.    The Twitter NYC Office is located in buildings of greater than 100,000 square feet.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to the precise square footage of the buildings in which Twitter, Inc. has leased an office space and, therefore, denies the allegations in Paragraph 32 of the Complaint.

**33.     At all times relevant to this action, Twitter's leasehold has been greater than 35,000 square feet.**

**ANSWER:**     X Corp. admits the allegation in Paragraph 33 of the Complaint.

**34.     At all times relevant to this action, Twitter, Inc. has been a "covered employer" under the DBSWPA, N.Y.C. Admin Code § 22-505(a).**

**ANSWER:**     The allegations in Paragraph 34 of the Complaint are legal conclusions to which no response is required.  To the extent that a response is required, X Corp. denies the allegations.  X Corp. denies any remaining allegations in Paragraph 34 of the Complaint.

**35.     Beginning on or around February 2023, Nexgen was a "successor building service contractor" and a "covered employer" under the DBSWPA, N.Y.C. Admin Code § 22505(a).**

**ANSWER:**     The allegations in Paragraph 35 of the Complaint are legal conclusions to which no response is required.  To the extent that a response is required, X Corp. denies the allegations.  X Corp. denies any remaining allegations in Paragraph 35 of the Complaint.

**36.     Beginning on or around April 2023, X Corp. was, as the successor-in-interest to Twitter, Inc., a "covered employer" under the DBSWPA, N.Y.C. Admin Code § 22-505(a).**

**ANSWER:**     The allegations in Paragraph 36 of the Complaint are legal conclusions to which no response is required.  To the extent that a response is required, X Corp. denies the allegations.  X Corp. denies any remaining allegations in Paragraph 36 of the Complaint.

**37.     At all times relevant to this action, Plaintiffs were "building service employees" protected by the DBSWPA, N.Y.C. Admin Code § 22-505(a).**

**ANSWER:**     The allegations in Paragraph 37 of the Complaint are legal conclusions to which no response is required.  To the extent that a response is required, X Corp. denies the allegations.  X Corp. denies any remaining allegations in Paragraph 37 of the Complaint.

### Factual Allegations

*Plaintiffs' Employment Under the Previous Building Service Contracts*

**38.     Ms. Gjoni, Ms. Mirabal, Ms. Gashi, Mr. Lorenzo, Ms. Tuqi, Mr. Tuqi, Ms. Demo, and Ms. Bana began working as cleaners at the Twitter NYC Office in 2015.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to when the Plaintiffs in Paragraph 38 of the Complaint began providing janitorial services at Twitter, Inc.'s office space in New York, NY via a contractor and, therefore, denies the allegations in Paragraph 38 of the Complaint.

**39.     Ms. Calderon and Ms. Williams began working as cleaners at the Twitter NYC Office in 2018.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to when the Plaintiffs in Paragraph 39 of the Complaint began providing janitorial services at Twitter, Inc.'s office space in New York, NY via a contractor and, therefore, denies the allegations in Paragraph 39 of the Complaint.

**40.     Ms. Gomez began working as a cleaner at the Twitter NYC Office in 2019.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to when the Plaintiff in Paragraph 40 of the Complaint began providing janitorial services at Twitter, Inc.'s office space in New York, NY via a contractor and, therefore, denies the allegations in Paragraph 40 of the Complaint.

**41.     Plaintiffs were union members represented by Local 32BJ of the Service Employees International Union ("SEIU 32BJ").**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to whether Plaintiffs were members of the Local 32BJ of the Service Employees International Union and, therefore, denies the allegations in Paragraph 41 of the Complaint.

**42.     Plaintiffs all worked full-time schedules, for forty hours per week, cleaning the Twitter NYC Office.**

**ANSWER:**   X Corp. lacks knowledge of information sufficient to form a belief as to whether Plaintiffs worked forty hours per week or the precise number of hours worked and, therefore, denies the allegations in Paragraph 42 of the Complaint.

43. **Plaintiffs' job duties included sweeping and mopping floors, cleaning and sanitizing kitchens and common spaces, emptying and removing trash and recycling, and various other cleaning-related tasks.**

**ANSWER:** X Corp. admits that pursuant to the Statement of Work governing Twitter, Inc.'s relationship with Flagship Facility Services, Inc., Plaintiffs were expected to perform janitorial-related job duties. X Corp. lacks knowledge of information sufficient to form a belief as to the precise activities performed by any of the named Plaintiffs and, therefore, denies the remaining allegations in Paragraph 42 of the Complaint. X Corp. denies any remaining allegations in Paragraph 43 of the Complaint.

44. **Beginning on approximately November 7, 2020, Twitter used the building services contractor Flagship Facility Services, Inc. ("Flagship") as its contractor to clean the Twitter NYC Office.**

**ANSWER:** X Corp. admits that Twitter, Inc. entered into a Statement of Work, effective November 1, 2020, with Flagship Facility Services, Inc. regarding provision of janitorial and integrated facility management services for Twitter, Inc.'s New York, NY office space. X Corp. denies any remaining allegations in Paragraph 44 of the Complaint.

45. **From approximately November 7, 2020 through December 19, 2022, Plaintiffs were employed by Flagship.**

**ANSWER:** X Corp. lacks knowledge of information sufficient to form a belief as to the precise nature of the relationship between Plaintiffs and Flagship and, therefore, denies the allegations in Paragraph 45 of the Complaint.

46. **On December 19, 2022, without any warning to Plaintiffs, Twitter terminated its contract with Flagship, under which contract Flagship provided cleaning services to Twitter. Immediately following Twitter's termination of that contract, Flagship terminated Plaintiffs' employment.**

**ANSWER:** X Corp. admits that Twitter, Inc.'s contract with Flagship was terminated in or around December 2022. X Corp. lacks knowledge of information sufficient to form a belief

as to the actions of Flagship and, therefore, denies those allegations in Paragraph 46 of the

Complaint.  X Corp. denies any remaining allegations in Paragraph 46 of the Complaint.

**47.    On information and belief, Twitter did not request a "full and accurate list containing the name, address, date of hire and employment classification of each building service employee employed" from Flagship fifteen days before terminating its contract, as required under the DBSWPA, N.Y.C. Admin Code § 22-505(b)(1).**

**ANSWER:**    X Corp. avers that the statute referenced in Paragraph 47 of the Complaint

is a document that speaks for itself.  To the extent that the allegations of Paragraph 47 misconstrue,

mischaracterize, or misstate the content of such document or otherwise take statements out of

context, they are denied.  The allegations in Paragraph 47 of the Complaint contain legal

conclusions to which no response is required. To the extent that a response is required, X Corp.

denies the allegations.  X Corp. denies any remaining allegations in Paragraph 47 of the Complaint.

**48.    At the time Flagship's contract was terminated, Ms. Gjoni, Ms. Gashi, Ms. Bana, Ms. Demo, Ms. Tuqi, Mr. Tuqi, Ms. Mirabal, and Mr. Lorenzo were each earning approximately $28.65 per hour.**

**ANSWER:**    X Corp. denies the allegations in Paragraph 48 of the Complaint.

**49.    At the time Flagship's contract was terminated, Ms. Gomez was earning approximately $24.66 per hour.**

**ANSWER:**    X Corp. denies the allegations in Paragraph 49 of the Complaint.

**50.    At the time Flagship's contract was terminated, Ms. Williams was earning approximately $31.16 per hour.**

**ANSWER:**    X Corp. denies the allegations in Paragraph 50 of the Complaint.

**51.    At the time Flagship's contract was terminated, Ms. Calderon was earning approximately $31.01 per hour.**

**ANSWER:**    X Corp. denies the allegations in Paragraph 51 of the Complaint.

**52.    At all times relevant to this action, no Plaintiff earned an hourly rate of pay in excess of the statutory threshold for protection under the DBSWPA, set forth in N.Y.C. Admin Code § 22-505(b)(1) and adjusted annually by the Mayor's Office of Labor Standards as prescribed in the statute.**

**ANSWER:**     X Corp. avers that the statute referenced in Paragraph 52 of the Complaint is a document that speaks for itself.  To the extent that the allegations of Paragraph 52 misconstrue, mischaracterize, or misstate the content of such document or otherwise take statements out of context, they are denied.  X Corp. denies the remaining allegations in Paragraph 52 of the Complaint.

**53.      On December 21, 2022, Plaintiffs' union, SEIU 32BJ, sent an email to Twitter advising Twitter of its obligation to retain Plaintiffs under the DBSWPA, transmitting an unconditional application for employment on behalf of Plaintiffs, and requesting that Twitter retain Plaintiffs for a minimum of 90 days, pursuant to the Act.**

**ANSWER:**     X Corp. avers that any email referenced in Paragraph 53 of the Complaint is a document that speaks for itself.  To the extent that the allegations of Paragraph 53 misconstrue, mischaracterize, or misstate the content of such document or otherwise take statements out of context, they are denied.  X Corp. denies any remaining allegations in Paragraph 53 of the Complaint.

**54.      Twitter did not respond to SEIU 32BJ's email. Twitter did not thereafter offer Plaintiffs employment, either directly or through a subsequent building service contractor, in the months that followed.**

**ANSWER:**     X Corp. lacks knowledge or information sufficient to form a belief and therefore denies the allegation.  X Corp. denies any remaining allegations in Paragraph 54 of the Complaint.

**55.      As a result of Twitter's actions, Plaintiffs were left jobless on Christmas Eve, forcing several of them to cancel or severely curtail their holiday celebrations.**

**ANSWER:**     X Corp. lacks knowledge or information sufficient to form a belief as to whether Plaintiffs were without any employment on Christmas Eve and therefore denies the allegation.  X Corp. denies any remaining allegations in Paragraph 55 of the Complaint.

*Twitter's Failure to Come into Compliance*

**56.**     In the months that followed, Twitter continued to ignore Plaintiffs' and their union's request to be retained as cleaners for the Twitter NYC Office, and their protests seeking action from the company.

**ANSWER:**     X Corp. denies the allegations in Paragraph 56 of the Complaint.

**57.**     Beginning in approximately February 2023, Twitter enlisted a new contractor, Defendant Nexgen, to clean the Twitter NYC Office.

**ANSWER:**     X Corp. admits that NeXgen Facilities Group, LLC has provided integrated facility management services at Twitter's New York offices starting in 2023.  X Corp. denies any remaining allegations in Paragraph 57 of the Complaint.

**58.**     On February 14, 2023, SEIU 32BJ sent Nexgen's President Jim Tabios an email advising Nexgen of its obligation to retain Plaintiffs under the DBSWPA, transmitting an unconditional application for employment on behalf of Plaintiffs, and requesting that Nexgen retain Plaintiffs for a minimum of 90 days, pursuant to the Act.

**ANSWER:**     X Corp. lacks knowledge or information sufficient to form a belief as to whether SEIU 32BJ sent an email to Jim Tabios and therefore denies the allegations in Paragraph 58 of the Complaint.  X Corp. denies any remaining allegations in Paragraph 58 of the Complaint.

**59.**     Nexgen did not respond SEIU 32BJ's request.

**ANSWER:**     X Corp. lacks knowledge or information sufficient to form a belief as to whether SEIU 32BJ sent an email to Jim Tabios and therefore denies the allegations in Paragraph 59 of the Complaint.  X Corp. denies any remaining allegations in Paragraph 59 of the Complaint.

**60.**     Nexgen did not thereafter offer Plaintiffs employment.

**ANSWER:**     X Corp. lacks knowledge or information sufficient to form a belief as to whether Plaintiffs were offered employment by NeXgen Facilities Group, LLC and therefore denies the allegations in Paragraph 60 of the Complaint.  X Corp. denies any remaining allegations in Paragraph 60 of the Complaint.

**First Cause of Action**
New York City Displaced Building Service Workers Protection Act
NYC Admin Code § 22-505

**61.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.**

**ANSWER:**     X Corp. realleges and reincorporates its responses to the allegations contained above with the same force and effect as if fully set forth herein.

**62.     Defendants failed to comply with their obligations under the DBSWPA.**

**ANSWER:**     The allegations in Paragraph 62 of the Complaint are legal conclusions to which no response is required.  To the extent that a response is required, X Corp. denies the allegations.

**63.     Defendants failed to retain Plaintiffs in violation of the DBSWPA, and have failed to subsequently instate/reinstate them to employment.**

**ANSWER:**     The allegations in Paragraph 63 of the Complaint are legal conclusions to which no response is required.  To the extent that a response is required, X Corp. denies the allegations.

**64.     Plaintiffs are therefore entitled to their back wages from the time of their termination through the present, which are continuing to accrue, plus an additional equal amount in liquidated damages, as a consequence of Defendants' failure to comply with the DBSWPA, under N.Y.C. Admin Code. § 22-505(e)(3)(a).**

**ANSWER:**     The allegations in Paragraph 64 of the Complaint are legal conclusions to which no response is required.  To the extent that a response is required, X Corp. denies the allegations.  X Corp. specifically denies that Plaintiffs have stated a cognizable legal claim for any cause of action that would entitle them to any compensation, damages, or relief whatsoever.

**65.     Plaintiffs further seek, and are entitled to, an injunction ordering their immediate instatement/reinstatement to employment by Defendants, and ordering that Plaintiffs be retained for a 90-day transition period, as required under the DBSWPA.**

**ANSWER:**     The allegations in Paragraph 65 of the Complaint are legal conclusions to which no response is required.  To the extent that a response is required, X Corp. denies the

allegations.  X Corp. specifically denies that Plaintiffs have stated a cognizable legal claim for any cause of action that would entitle them to any compensation, damages, or relief whatsoever.

**66.    Plaintiffs also seek, and are entitled to, the cost of the benefits that the successor building service contractor would have incurred for them under Plaintiffs' benefit plan, under N.Y.C. Admin Code § 22-505(e)(3)(b).**

**ANSWER:**    The allegations in Paragraph 66 of the Complaint are legal conclusions to which no response is required.  To the extent that a response is required, X Corp. denies the allegations.  X Corp. specifically denies that Plaintiffs have stated a cognizable legal claim for any cause of action that would entitle them to any compensation, damages, or relief whatsoever.

**67.    Plaintiffs also seek, and are entitled to, attorneys' fees and costs under N.Y.C. Admin Code § 22-505(e)(3)(c), and interest.**

**ANSWER:**    The allegations in Paragraph 67 of the Complaint are legal conclusions to which no response is required.  To the extent that a response is required, X Corp. denies the allegations.  X Corp. specifically denies that Plaintiffs have stated a cognizable legal claim for any cause of action that would entitle them to any compensation, damages, or relief whatsoever.

## WHEREFORE CLAUSES

In response to the WHEREFORE clauses section of Plaintiffs' Complaint, X Corp. admits that Plaintiffs purport to seek the relief identified in the WHEREFORE clauses of the Complaint, but denies that Plaintiffs are entitled to any type of remedy, relief, or damages of any kind, including the relief requested, and further deny the remaining allegations contained within these clauses.

## GENERAL DENIAL

X Corp. denies all allegations in the Complaint not specifically admitted herein.

## DEFENSES

16

Without assuming the burden of proof on any matters that would otherwise rest with Plaintiffs, and expressly denying any and all wrongdoing, X Corp. alleges the following defenses to the Complaint.  X Corp. presently has insufficient knowledge or information to form a belief as to whether there are or may be additional defenses other than those stated below and has not waived any applicable defenses or affirmative defenses.  X Corp. explicitly reserves the right to assert and rely upon such other defenses as additional information becomes available during discovery proceedings or otherwise.  X Corp. further reserves the right to amend this Answer and/or defenses accordingly, and/or to delete defenses that it determines are not applicable, as additional information becomes available during discovery proceedings or otherwise.

WHEREFORE, X Corp. asserts the following defenses and prays for judgment as set forth below:

1) Plaintiffs' Complaint, in whole or in part, fails to state facts sufficient to state a claim upon which relief may be granted.

2) Plaintiffs' claim is barred to the extent they failed to exhaust administrative remedies and/or satisfy some or all conditions precedent required to bring their claims.

3) Any action taken (or omission) by X Corp. with respect to Plaintiffs was done in good faith based on lawful business reasons, and in conformity with applicable federal, state, and local laws.

4) Plaintiffs' claim and remedies are barred because they are not and at all times relevant, were not "building service employees" as defined by the New York City Administrative Code § 22-505.

17

5)   Plaintiffs' claim and remedies are barred because X Corp. and/or Twitter, Inc. were "covered employers" as defined by the New York City Administrative Code § 22-505.

6)   Plaintiffs have not suffered any damages or losses, or if Plaintiffs did suffer damages or losses, such damages or losses were caused in whole or in part by Plaintiffs' own acts, omissions or conduct.

7)   Plaintiffs' claim is barred in whole or in part because Plaintiffs have not appropriately or adequately mitigated their alleged damages or otherwise avoided harm.

8)   Plaintiffs' claim is barred in whole or in part by the applicable statutes of limitations.

9)   Plaintiffs' claim is barred in whole or in part by the doctrine of estoppel.

10)  Plaintiffs' claim is barred in whole or in part because such claim has been waived, discharged, and/or abandoned.

11)  Plaintiffs' claim is barred in whole or in part by the doctrine of laches.

12)  Plaintiffs' claim is barred in whole or in part by their unclean hands and/or inequitable or wrongful conduct.

13)  If any improper, illegal or unlawful acts were taken by any of X Corp.'s employees against Plaintiffs, it was outside the course and scope of that employee's employment, contrary to X Corp.' policies, and was not ratified, confirmed or approved by X Corp. Thus, any such actions were independent, intervening, and unforeseeable acts that cannot be attributed or imputed to X Corp.

14) Plaintiffs' claims are barred because, upon information and belief, Plaintiffs are subject to a Collective Bargaining Agreement that sets forth the terms and conditions of employment, including for the discharge or laying off of employees, and such claims are barred by Section 301 of the Labor Management Relations Act.

15) Plaintiffs' claims are barred because X Corp. was at all times acting in accordance with and/or not contrary to the terms of the applicable Collective Bargaining Agreement.

16) Plaintiffs' claims are barred, in whole or in part, to the extent that they failed to timely and fully exhaust any applicable internal, administrative, statutory, and/or collective bargaining grievance procedures or remedies.

X Corp. reserves the right to assert such other and additional defenses that may appear and prove applicable during the course of this litigation.

WHEREFORE, having fully answered, X Corp. denies that Plaintiffs are entitled to the relief requested, or to any other relief.  X Corp. denies each and every allegation of the Complaint not heretofore specifically admitted.

WHEREFORE, X Corp. requests a judgment as follows:

a)  Dismissing Plaintiffs' Complaint in its entirety with prejudice;

b)  Granting X Corp.'s costs, disbursements, and reasonable attorneys' fees incurred in defending this action; and

c)  Granting such other and further relief in favor of X Corp. and against Plaintiffs as the Court deems just and proper.

Dated: August 25, 2023                          Respectfully submitted,

/s/ Elisa Egonu
Elisa Egonu
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
Telephone:     (212) 309-6000
Facsimile:      (212) 309-6001
elisa.egonu@morganlewis.com

*Attorneys for Defendants Twitter, Inc. and
X Corp.*

## **CERTIFICATE OF SERVICE**

I, Elisa Egonu, hereby certify that a true and correct copy of the foregoing document was served via ECF on this 25th day of August 2023 upon counsel for all parties.

Dated:  August 25, 2023                                 */s/ Elisa Egonu*
                                                                          Elisa Egonu